[Civ. No. 38582. First Dist., Div. Four. Oct. 27, 1976.]

GLORIA PAULUS, Plaintiff and Appellant, v.
BOARD OF TRUSTEES OF SEQUOIA UNION
HIGH SCHOOL DISTRICT et al., Defendants and Respondents.

## COUNSEL

Rubin Tepper for Plaintiff and Appellant.

Keith C. Sorenson, District Attorney, and George F. Camerlengo, Deputy District Attorney, for Defendants and Respondents.

## OPINION

CALDECOTT, P. J.—Appellant Gloria Paulus filed a petition for writ of mandate, seeking to compel respondents Board of Trustees of the Sequoia Union High School District (hereinafter Board) and the Sequoia Union High School District (hereinafter District) to classify her as a

probationary teacher and to set aside her dismissal as an employee of respondent. The appeal is from the judgment denying the petition.

## I

Appellant's principal contention is that the circumstances under which she signed the employment contract in December 1974 mandated that she be classified as a probationary teacher, pursuant to controlling statutes, and that the statutory scheme cannot be circumvented by contractual agreement to the contrary.

We agree with appellant that the court's conclusion that she was "bound by the terms of her contract and . . . estopped to claim probationary status" is erroneous *if* the statutory scheme compels a "probationary teacher" classification under the facts of the hiring situation. Education Code[1] section 13338.1 provides: "Except as provided in Sections 13406 [failure to demand hearing] and 13448 [terminated permanent employees], any contract or agreement, express or implied, made by any employee to waive the benefits of this chapter or any part thereof is null and void."

In *Campbell* v. *Graham-Armstrong,* 9 Cal.3d 482 [107 Cal.Rptr. 777, 509 P.2d 689], defendant school board contended that plaintiff teachers had waived certain statutory rights by agreement to the contrary. The court held that, under section 13338.1, such waiver was impermissible. (9 Cal.3d at pp. 486-487.) Thus, if under the factual circumstances of appellant's hiring, the Education Code compelled classification as a probationary, rather than a temporary, teacher, any contractual agreement to the contrary was ineffective to alter that status or waive the benefits accruing thereto. Nor was respondent "ignorant of the true state of facts" so as to justify application of the doctrine of equitable estoppel. (*Strong* v. *County of Santa Cruz,* 15 Cal.3d 720, 725 [125 Cal.Rptr. 896, 543 P.2d 264].)

## II

However, the crucial question is whether appellant's status was in fact controlled by statute, for it is settled that "unless statutory mandate compels otherwise, the position of the teacher is created and fixed by the terms of the contract of employment." (*Rutley* v. *Belmont Elementary*

---

[1]All statutory references are to the Education Code unless otherwise noted.

*Sch. Dist.,* 31 Cal.App.3d 702, 705 [107 Cal.Rptr. 671]; *Matthews* v. *Board of Education,* 198 Cal.App.2d 748, 752 [18 Cal.Rptr. 101].) Moreover, "[i]n order to abrogate the contract the statutory mandate must be clear." (*Centinela Valley Secondary Teachers Assn.* v. *Centinela Valley Union High Sch. Dist.,* 37 Cal.App.3d 35, 38 [112 Cal.Rptr. 27].)

Appellant relies upon section 13337 which provides that if classes or duties continue beyond the first three months of any term the certified employee shall be classified as a probationary employee. Respondents, on the other hand, cite section 13337.3: "Notwithstanding the provisions of Sections 13336 and 13337, the governing board of a school district may employ as a teacher, for a complete school year, but not less than one semester during a school year, . . . any person holding appropriate certification documents, and may classify such person as a temporary employee. The employment of such persons shall be based upon the need for additional certificated employees during a particular semester or year because a certificated employee has been granted leave for a semester or year, or is experiencing long-term illness, and shall be limited, in number of persons so employed, to that need, as determined by the governing board."[2]

■ Appellant's contentions turn on the assertion that she was hired to fill a vacancy created by the death of a permanent employee, Mae Hayes. However, the flaw in this argument is that it is contrary to the factual findings of the trial court to the effect that at the time of Mrs. Hayes' death, there were 24.85 full-time equivalent permanent or probationary teachers on leave in the district and only 17.7 full-time equivalent temporary teachers employed to replace the teachers on leave, and that appellant was offered and accepted a contract as a temporary teacher to replace a permanent teacher on leave. The evidence on these points was uncontradicted. On appeal, the extent of this court's inquiry into findings of fact is whether they are supported by substantial evidence (*Foreman & Clark Corp.* v. *Fallon,* 3 Cal.3d 875, 881 [92 Cal.Rptr. 162, 479 P.2d 362]), and there is such evidence here.

Thus, appellant's argument turns upon a factual matter that was determined adversely to her; namely, she was not employed to "replace" Mae Hayes, but rather was hired as a temporary teacher because of the shortage created by permanent or probationary teachers on leaves of

---

[2]This section was amended in 1975; however, the amendment does not affect, and would not alter, the result herein.

absence. Appellant contends that this mathematical "maneuvering" requires the assumption that high school teachers are "fungibles," and that any vacant position can be filled by any credentialed employee. However, though we recognize the problems posed by this question, we do not discuss it, for the burden of proof in the mandate action was on the appellant as petitioner (*Centinela Valley Secondary Teachers Assn., supra,* 37 Cal.App.3d at p. 41), and she presented no evidence that none of the teachers on leave of absence were qualified to teach the classes formerly taught by Mrs. Hayes.

It is true that the death of Mrs. Hayes *occasioned* the hiring of appellant under a contractual arrangement. However, the findings of the court imply that the *need* for appellant's services was due to the fact that fewer temporary replacements had been hired than permanent or probationary teachers were on leave of absence; in other words, the district was, prior to Mae Hayes' death, operating seven permanent or probationary teachers short-handed. Respondents did not need a replacement for Mrs. Hayes; they needed a temporary teacher in the absence of and pending return of the additional teachers already on leave.

Nor does the fact that appellant was assigned to continue in Mrs. Hayes' former classes for the remainder of the school year indicate that she was actually hired to "replace" the deceased teacher. "[T]he assignment of teachers to classes for which a teacher is certificated is entirely within the discretion of the governing board of the school district and by his assignment a teacher does not acquire tenure in a particular class or room." (*Rutley, supra,* 31 Cal.App.3d at p. 708; *Centinela Valley Secondary Teachers Assn., supra,* 37 Cal.App.3d at p. 40.) Nothing in section 13337.3 indicates an intention to restrict this "free hand in classifying newly hired teachers" (*Rutley, supra,* 31 Cal.App.3d at p. 707) by requiring that a temporary teacher be assigned to the classroom of the particular permanent or probationary teacher whose absence (due to leave or illness) has necessitated the hiring of the temporary teacher. The court found that appellant was retained in the mathematics classes formerly taught by Mrs. Hayes for the benefit of the students, rather than disrupt the ongoing classes. As stated in *Centinela, supra,* Education Code section 939 "provides for the well recognized prerogative of the school administrator to control class assignments. That prerogative is to be exercised for the best interests of the students.

"The administrative decision to have petitioner continue with the same classes rather than shift her to another assignment after one semester and then introduce a different teacher to complete the second half of year-long courses was calculated to benefit the students in those courses. The district should not be penalized for that decision." (37 Cal.App.3d at p. 40.)

We are aware that "[b]ecause the substitute and temporary classifications are not guaranteed procedural due process by statute, they are narrowly defined by the Legislature, and should be strictly interpreted." (*Balen* v. *Peralta Junior College Dist.,* 11 Cal.3d 821, 826 [114 Cal.Rptr. 589, 523 P.2d 629].) We agree with appellant that the statutes are not to be evaded by subterfuge. However, appellant's contention that she was hired to replace a deceased teacher was rejected by the trial court, and the court's findings, supported by substantial evidence, compel the conclusion that she was properly hired as a temporary teacher.

It is true that appellant *could* have been hired as a probationary teacher upon the death of Mrs. Hayes. However, the statutes plainly do not compel such a classification under these circumstances, and the terms of the contract are therefore consistent with section 13337.3 and are controlling. As a temporary teacher, appellant was thus not entitled to any rights under section 13443 (*Balen, supra,* 11 Cal.3d at p. 826), and the writ was properly denied.

The judgment is affirmed.

Rattigan, J., and Christian, J., concurred.

A petition for a rehearing was denied November 24, 1976, and appellant's petition for a hearing by the Supreme Court was denied December 22, 1976.